**UNITED STATES COURT OF APPEALS**
**DISTRICT OF COLUMBIA CIRCUIT**

JAMES K. KNIGHT,

      Petitioner,

**v.**

NATIONAL TRANSPORTATION
SAFETY BOARD and
FEDERAL AVIATION ADMINISTRATION,

      Respondents.

**Petition for Review: 25-1158**

## <u>PETITION FOR REVIEW OF AGENCY ORDER</u>

Petitioner James K. Knight, by and through counsel of record and pursuant to 5 U.S.C. § 504, petitions this Court for a Review of the National Transportation Safety Board's [hereinafter, the "NTSB"] *Opinion and Order* entered on June 25, 2025, denying Petitioner's application for his attorney fees and expenses against the Federal Aviation Administration [hereinafter, the "FAA"] under the Equal Access to Justice Act, 5 U.S.C. § 504. A copy of the *Opinion and Order* is attached as **Exhibit A.**

Petitioner was the prevailing party in the underlying FAA enforcement action before the NTSB. The Administrative Law Judge granted Petitioner's application for EAJA fees, but the NTSB overturned that decision, finding the FAA's position substantially justified. Petitioner seeks judicial review on the grounds that the NTSB's decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

**Date:** <u>July 23, 2025</u>

Respectfully Submitted,

**COOLING & HERBERS, P.C.**

<u>*/s/ Elizabeth A. Vasseur-Browne*</u>
Elizabeth A. Vasseur-Browne (Admission pending)
2400 City Center Square
1100 Main Street
Kansas City, Missouri 64105
Telephone: (816) 474-0777
Facsimile: (816) 472-0790
lbrowne@coolinglaw.com
**ATTORNEY FOR PETITIONER
JAMES K. KNIGHT**

SERVED: June 25, 2025

NTSB Order No. EA-6007

UNITED STATES OF AMERICA
**NATIONAL TRANSPORTATION SAFETY BOARD**
WASHINGTON, D.C.

Adopted by the NATIONAL TRANSPORTATION SAFETY BOARD
at its office in Washington, D.C.
on the 25th day of June, 2025

|  |  |
|---|---|
| APPLICATION OF )  )  ) | |
| JAMES K. KNIGHT, )  ) | Docket No.: 1018-EAJA-SE-30667 |
|  ) | |
| For an award of attorney )  fees and expenses under the )  Equal Access to Justice Act )  )  ) | |

**OPINION AND ORDER**

The Administrator has appealed the Equal Access to Justice Act (EAJA) decision and

order of Administrative Law Judge Alisa M. Tapia, served on May 16, 2024.[1] By that decision

and order, the law judge granted applicant's EAJA[2] application for an award of $62,821 in

attorney's fees and expenses. The law judge's award was based on a finding that the

Administrator was not substantially justified in pursuing an allegation that applicant performed a

---

[1] A copy of the law judge's decision and order granting the EAJA application is attached.
[2] 5 U.S.C. § 504; *see also* 49 C.F.R. part 826.

**Exhibit A**

safety-sensitive function for an air carrier certificate holder while having a prohibited drug in his system in violation of 14 C.F.R. § 120.33(b). We grant the Administrator's appeal.

1.    *Background*

    *A. Facts*

Applicant, who holds an airline transport pilot certificate, a ground instructor certificate, and a medical certificate, was subject to a Department of Transportation (DOT) drug testing program through his employer.[3] In December 2018, applicant and his wife took their son to the emergency room on two consecutive nights and after returning home the second time, applicant realized that in the rush to get ready to go back to the emergency room, applicant took his son's Vyvanse rather than his own prescribed cholesterol medication.[4] On December 20, 2018, after returning to work, applicant was selected for a random drug test and provided a urine specimen to a test collector that day.[5] Applicant did not report the ingestion of the prohibited drug to anyone prior to his drug test.[6] On December 24, 2018, his employer's Medical Review Officer (MRO) informed applicant that his specimen tested positive for amphetamine, a prohibited substance.[7] Applicant informed the MRO that he had ingested his son's medication, and requested testing of his split sample; the results reconfirmed the presence of amphetamine.[8]

    *B. Procedural Background*

On May 20, 2019, the Administrator issued an Emergency Order of Revocation, which became the complaint in the case, revoking applicant's airline transport pilot, ground instructor,

---

[3] Compl. at ¶¶ 1-2, 4; Answer at ¶¶ 1-2, 4. *See also* Exh. A-11.
[4] Tr. 71.
[5] Compl. at ¶¶ 6-7; Answer at ¶¶ 6-7.
[6] Tr. 73.
[7] Compl. at ¶¶ 11-14; Answer at ¶¶ 12-13.
[8] Compl. at ¶¶ 15-17; Answer at ¶ 15; Tr. 76.

**Exhibit A**

and medical certificates. The Administrator alleged applicant violated 14 C.F.R. § 120.33(b) by performing safety-sensitive functions with a prohibited drug in his system.[9] Further, the Administrator alleged that applicant lacked the qualification to hold any class of airman medical certificate under 14 C.F.R. §§ 67.107(b)(2), 67.207(b)(2), and 67.307(b)(2), which preclude medical certification of an airman with substance abuse within the preceding two years, defined as including a verified positive drug test result.[10] Applicant timely appealed the order and Judge John H. Schumacher conducted a hearing on September 5, 2019.

*C. Law Judge's Oral Initial Decision and Board Opinion and Order*

In the September 6, 2019, Oral Initial Decision, Judge Schumacher determined that the Administrator proved applicant violated 14 C.F.R. § 120.33(b), as alleged. In making this determination, the law judge cited the regulatory violations alleged in the complaint, noted applicant's admissions and denials in his answer, listed the admitted exhibits, and summarized witness testimony.

The law judge assessed the pertinent witnesses' credibility. In determining applicant's credibility, the law judge stated,

> I listened very carefully to him as he testified and for the record I want to note he was seated approximately 6 feet from where I am seated. I had a chance to observe him and a chance to listen carefully to every word that he said. I note that he made eye contact with me every time he was talking to me and I found nothing in his testimony that would indicate to me he was attempting to be evasive in any way or to falsify his testimony in any way.[11]

The law judge noted that applicant did not challenge the validity of his selection

---

[9] Section 120.33(b) provides that:
> No certificate holder or operator may knowingly use any individual to perform, nor may any individual perform for a certificate holder or an operator, either directly or by contract, any function listed in subpart E of this part while that individual has a prohibited drug, as defined in this part, in his or her system.

[10] Compl. at 3.

[11] Oral Initial Decision at 193.

for random drug testing, the testing process, or the drug test results showing the presence of amphetamine in his system.[12] Further, the law judge found that because applicant admitted several of the paragraphs in the Administrator's complaint, those allegations are deemed established and the Administrator proved the allegations in the complaint by a preponderance of the reliable, probative and credible evidence.[13] The law judge further found that applicant did not prove his affirmative defense of innocent or unknowing ingestion by a preponderance of the evidence.[14]

The law judge examined the Administrator's sanction of revocation under the deference provided in the Pilot's Bill of Rights[15] and the Supreme Court's decision in *Martin v. Occupational Safety and Health Review Commission*.[16] Examining the facts and circumstances before him, the law judge held that revocation was excessive and mitigated the sanction to a 90-day suspension.[17] In reducing the sanction, the law judge cited several mitigating factors, including: applicant's good character and professionalism as a pilot; his responsible actions once he ingested his son's medication, such as self-reporting; his compliance with the drug testing protocol and efforts at rehabilitation; and his "lengthy period of unblemished licensure."[18] The parties cross-appealed the law judge's oral initial decision.

The Board issued an Opinion and Order on August 23, 2021, reversing the law judge's rejection of applicant's accidental ingestion affirmative defense, but affirming the 90-day suspension.[19] In upholding applicant's affirmative defense, the Board noted that the parties

[12] *Id.* at 189.
[13] *Id.* at 189-90.
[14] *Id.* at 192.
[15] Public Law 112-153 (2012).
[16] 499 U.S. 144 (1991).
[17] Oral Initial Decision at 193-94.
[18] *Id.* at 192-93.
[19] *Administrator v. Knight*, NTSB Order No. EA-5903 (2021).

stipulated that, "[t]here is no evidence that [applicant] intentionally or knowingly ingested his son's [Vyvanse] medication."[20] Further, the Board cited the law judge's finding that applicant's testimony, in which applicant detailed his family emergency and factors leading him to mistake his son's medication for his own, was credible and that applicant provided corroborating evidence, including character witnesses and photographs of the medications, supporting his testimony.[21] Moreover, the Board agreed with the law judge's mitigation of the sanction from a revocation to a 90-day suspension. The Board stated that given the accidental nature of the ingestion and Board precedent, revocation was excessive, but a sanction was justified. The Board explained, "While we agree that revocation was excessive in this matter, we find that [applicant] knew that he took Vyvanse and failed to report the accidental ingestion of a prohibited substance to his employer once he became aware of it, and still reported for duty … As a certificate holder, [applicant] had a responsibility to report the ingestion of a prohibited drug as soon as he discovered it. Because [applicant] failed to do so, we uphold the law judge's 90-day suspension."[22]

*D. Law Judge's Decision and Order on the EAJA Application*

Applicant submitted a timely application for attorney's fees and expenses under the EAJA, which the Administrator opposed. Judge Tapia granted the application in part, awarding $62,821.32 fees and expenses,[23] and finding that applicant was the prevailing party and the Administrator was not substantially justified in pursuing the case. In determining that applicant was the prevailing party, the law judge cited the Board's finding that applicant proved his

---

[20] *Id.* at 22 (citing Joint Stipulations at ¶ 24).
[21] *Id.* at 22-23.
[22] *Id.* at 26.
[23] Applicant sought $70,039 in fees and expenses.

affirmative defense of accidental ingestion and the parties' stipulation that applicant "did not intentionally or knowingly ingest his son's medication."[24]

In concluding that the Administrator was not substantially justified, the law judge stated that the Administrator pursued revocation without an adequate investigation. She held that applicant asserted that his ingestion was accidental and provided evidence supporting his position, including emergency room records and photos of the medications, yet "the Administrator pursued a revocation action without further thought."[25] The law judge further concluded that applicant handed the Administrator the "due diligence" investigation evidence "on a silver platter," which should have resulted in a modified sanction.[26] According to the law judge, the Administrator failed to closely examine applicant's evidence, including Martin Lythgoe's opinion as a drug and alcohol counselor who testified at the hearing that applicant should have been returned to his duties; the law judge asserted, "Mr. Lythgoe's extensive experience and expertise make his opinion highly credible."[27] Further, the law judge explained that the Administrator's sanction of revocation was inappropriate given the evidence applicant presented and therefore, the Administrator was obligated to modify the sanction to a suspension.[28] Moreover, the law judge explained that the Administrator treated the violation as a strict liability offense and relied on a flawed theory that affirmative defenses are not viable in prohibited drug ingestion cases.[29]

---

[24] Decision and Order on EAJA Application at 4.

[25] *Id.* at 5.

[26] *Id.* at 6.

[27] *Id.*

[28] *Id.*

[29] *Id.*

**Exhibit A**

The law judge determined that the Administrator's position throughout the case was not substantially justified and held that the case should not have proceeded to an evidentiary hearing.[30] Therefore, the law judge granted applicant's EAJA application.

*E. Issues on Appeal*

The Administrator appeals the law judge's order granting fees, arguing that: (1) applicant was not the prevailing party; and (2) the Administrator was substantially justified in bringing the case against applicant.

## 2. *Decision*

The Board has held that, consistent with the standard of review applicable to cases on the merits, in which the Board conducts a *de novo* review, we will examine a law judge's determinations concerning EAJA applications *de novo*.[31] *De novo* review is consistent with the EAJA, which states, "[t]he decision of the **agency** on the application for fees and other expenses ***shall be the final*** administrative decision under this section."[32] "EAJA entitles a 'prevailing party' in an administrative proceeding brought by the Government to recover attorney fees and expenses 'incurred by that party' in the proceeding, unless the Government's position 'was substantially justified or. . . special circumstances make an award unjust.'"[33]

*A. Applicant was a prevailing party.*

The Board has held that in determining whether a party is a "prevailing party" for purposes of EAJA, the Board applies a three-part test: "(1) there must be a 'court-ordered change

---

[30] *Id.* at 7.

[31] *Application of Kamm*, NTSB Order No. EA-5636 at 5 (2012).

[32] *Id.* (emphasis added) (citing *Smith v. Nat'l Transp. Safety Bd.*, 992 F.2d 849, 851-52 (8th Cir. 1993) ("Whether the agency's position was substantially justified is determined by examining the administrative record as a whole. [5 U.S.C. § 504(a)(1)] The decision of the Board, ***and not the ALJ***, is the final agency decision subject to our review, *id.* § 504(a)(3).") (emphasis added).

[33] *Application of Bond*, NTSB Order No. EA-5698 (2014) (quoting 5 U.S.C. § 504(a)(1)).

in the legal relationship' of the parties: (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief."[34] Applying this test, the Board finds that applicant was a prevailing party.

As a result of the hearing law judge's and Board's decisions, there was a change in the legal relationship between the Administrator and applicant. The Administrator issued an emergency order immediately revoking applicant's certificates, requiring applicant to surrender his certificates.[35] Following the proceedings at issue, the sanction became a 90-day suspension, allowing applicant to retain his certificates once the suspension was served and enjoy the certificates' privileges. Applicant's ability to hold his certificates, rather than having to reapply, is a change to his legal relationship with the Administrator. The sanction mitigation also satisfies the third prong of the test by offering applicant with judicial relief as he is able to use his certificates after the suspension period, which was the relief he sought.[36]

In addition, applicant meets the second prong of the test because the judgment was in his favor. When appealing Judge Schumacher's decision to the Board, applicant did not seek to overturn the regulatory violation finding, but instead, asked that the Board find that he proved his affirmative defense of accidental ingestion. In his appeal brief, applicant specified, "Mr. Knight does not challenge the imposition of a 90-day suspension, he only challenges Judge

---

[34] *Id.* (citing *District of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010)). In *Straus*, the D.C. Circuit stated, "Although we developed this test in connection with requests for fees by plaintiffs, we have applied its latter two requirements to requests by defendants as well." *Straus*, 590 F.3d at 901. However, in the Board's prior cases in which respondents sought fees, such as *Application of Bond*, we applied all three prongs of the test and therefore, will do so here.

[35] *See* Compl. at 4 (instructing applicant that he may not reapply for his certificates for one year from the date of the emergency order).

[36] *See e.g., Application of Bordelon*, NTSB Order No. EA-5601 (2011) (finding judicial relief in the dismissal of the case with prejudice under the third prong, noting the FAA returned applicant's surrendered mechanic certificate to him and could take no further action on the certificate).

Schumacher's finding that he did not prove by a preponderance of the evidence his affirmative defense of an accidental ingestion."[37] The Board granted applicant's appeal. Moreover, in his pre-trial brief filed before the hearing, applicant asked the law judge to consider the cases applicant cited to "determine the appropriate sanction" and acknowledged, "case precedent may support a sanction against [applicant], but clearly not revocation."[38] Applicant sought a reduced sanction, rather than no sanction at all. The Board now finds that the judgment was in applicant's favor because his appeal was granted and he was awarded the relief he requested.[39]

### B. The Administrator's position was substantially justified.

Regardless of whether applicant was a prevailing party, he is not entitled to fees and expenses under EAJA because the Administrator was substantially justified in bringing the case. Under the EAJA, we will not award certain attorney's fees and other specified costs if the government was substantially justified in pursuing its complaint.[40] The Supreme Court has defined the term "substantially justified" to mean the government must show its position is reasonable both in fact and law.[41] Such a determination of reasonableness involves an initial assessment of whether sufficient, reliable evidence exists to pursue the matter.[42]

The Board has previously recognized the EAJA's substantial justification test is less rigorous than the Administrator's burden of proof when arguing the merits of an underlying

---

[37] Appeal Br. at 2.

[38] Respondent's Pre-Trial Br. at 6, 8.

[39] *See Application of Air Trek*, NTSB Order No. EA-5510 at 9 (2010); NTSB Order No. EA-5551 (2010) (Order denying reconsideration) (finding the applicant was a prevailing party, in part, because the sanction was modified).

[40] 5 U.S.C. § 504(a)(1); *Application of Kamm, supra* note 31, at 6; *Application of Bordelon, supra* note 36; *Application of Smith*, NTSB Order No. EA-3648 at 2 (1992).

[41] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see also Application of U.S. Jet, Inc.*, NTSB Order No. EA-3817 (1993).

[42] *Catskill Airways, Inc.*, 4 NTSB 799, 800 (1983) (Congress intended EAJA awards to dissuade the government from pursuing weak or tenuous cases).

complaint.[43] In *Federal Election Commission v. Rose*,[44] the D.C. Circuit stated that the merits phase of a case is separate and distinct from the EAJA phase. As such, the Board is compelled to engage in an independent evaluation of the circumstances leading to the Administrator's original complaint and determine whether the Administrator was substantially justified in pursuing the case based on those circumstances.[45]

The Board has held the Administrator is substantially justified in pursuing a complaint if key factual issues hinge on witness credibility. In *Application of Keith*, the Board stated, "[b]ecause resolution of the matter at issue rested so prominently on the law judge's determination of witness credibility, we do not find convincing applicant's argument that the Administrator pursued this case with no substantial justification."[46] The Administrator cannot predict with certainty which witnesses the law judge will find most credible.[47] In this regard, the Board has stated, "[s]ubstantial justification for the FAA's position cannot be found lacking simply because the law judge discredited the testimony of a particular witness."[48]

In this case, the hearing law judge's credibility findings were essential to the Board's conclusion that applicant proved his affirmative defense of accident ingestion and in affirming the reduced sanction. While in her decision on applicant's EAJA application the law judge does not explicitly address whether credibility findings were necessary to decide the merits, she

---

[43] *Application of Kamm, supra* note 31 at 6; *Application of Bordelon, supra* note 36 at 12; *Application of Beauchamp*, NTSB Order No. EA-5422 at 9 (2008); *see also U.S. Jet, supra* note 41 at 3 (citing *Administrator v. Pando*, NTSB Order No. EA-2868 (1989)).
[44] 806 F.2d 1081 (D.C. Cir. 1986).
[45] *Id.* at 1087.
[46] NTSB Order No. EA-5223 at 8 (2006); *see also Application of Bordelon, supra* note 36 at 15; *Application of Peterson*, NTSB Order No. EA-4490 at 6 (1996).
[47] *See Application of Caruso*, NTSB Order No. EA-4165 at 9 (1994); *Application of Conahan*, NTSB Order No. EA-4276 at 4 (1994); *Application of Martin*, NTSB Order No. EA-4280 at 7-8 (1994).
[48] *Application of Peterson, supra* note 46 at 7.

---

mentions witness credibility in her reasoning for granting applicant's application. Specifically, she states that the opinion of one of applicant's witnesses was credible, that the Administrator should have considered the witness' position, and that the witness' hearing testimony supported applicant's position.[49] Yet, there was no way to determine the witness' credibility without a hearing and before the hearing, the Administrator could not reasonably assess the witness' opinion. As the Board has held, the hearing law judge is in the best position to weigh witness credibility and under our long-standing precedent, credibility determinations are "within the exclusive province of the [hearing] law judge."[50]

Furthermore, had the hearing law judge found applicant not credible, it would have impacted his decision to mitigate the sanction. Applicant admitted to ingesting a prohibited substance and then reporting to work in a safety sensitive position. If the hearing law judge did not believe applicant's story surrounding the drug ingestion, he would have been less likely to find, for instance, that: applicant rushed his son to the emergency room; applicant recently moved and therefore, his medications were not separated from his son's; applicant's prescription medication looked similar to his son's medication; and critically, his ingestion of the prohibited drug was inadvertent. Ultimately, the case rested on the hearing law judge's credibility determination for applicant. Based on the FAA sanctions policy, the Administrator chose to revoke applicant's certificates, but because the hearing law judge found applicant credible, he mitigated the sanction. Furthermore, the Board relied on the hearing law judge's finding that applicant's testimony was credible in concluding that he proved his affirmative defense of accidental ingestion and in affirming the reduced sanction, rather than a revocation.

---

[49] Decision and Order on EAJA Application at 6.

[50] *Administrator v. Kocsis*, 4 NTSB 461, 465 n.23 (1982). *See also Administrator v. Smith*, 5 NTSB 1560, 1563 (1986); *Administrator v. Sanders*, 4 NTSB 1062 (1983).

Additionally, the Administrator had sufficient evidence to pursue the case against applicant. In fact, both the hearing law judge and the Board agreed with the Administrator that applicant violated the charged regulation and determined that the Administrator proved his case. Not only was a hearing required to determine the witnesses' credibility, but the Administrator reasonably relied on the evidence to support his theory that the applicant ingested a prohibited substance and performed a safety-sensitive function. The Board has held, "the Administrator has a duty to discontinue his investigation or prosecution at any time he knows *or should know* that his case is not reasonable in fact or law, or be liable for EAJA fees for any further expenses applicant incurs."[51] Here, the Administrator had a reasonable basis in law and fact to bring the case. Prior to the hearing, the Administrator could not determine whether applicant would testify credibly, but applicant admitted to ingesting his son's medication. Such an ingestion was prohibited and violated the applicable regulation. Further, requiring the Administrator to give weight to every certificate holder's claim that an illegal ingestion was accidental would render the drug testing program meaningless and have a negative impact on air safety. The Board has repeatedly recognized the importance of reliable drug testing on air safety and has rejected attempts at post-hoc rationalizations for failing to pass a mandatory drug test.[52] Given that the Administrator proved that applicant reported to work in his safety sensitive position with a

---

[51] *Application of Scott*, NTSB Order No. EA-4274 at 5 (1994) (emphasis in original).

[52] *See, e.g., Administrator v. Castillo*, NTSB Order No. EA-5942 (2022) (rejecting post-hoc reasons for refusing to submit to a required drug test); *Administrator v. Overcash*, NTSB Order No. EA-5943 (2022) (rejecting after-the-fact justifications for failing to provide a sufficient sample during a mandatory drug test). *See also Administrator v. Weidner*, Docket No. SE-15915 (May 12, 2000) (rejecting defense to positive drug test, stating, "recognizing the defense would severely impair the drug testing program and deter it from achieving its safety goal of keeping drug abusers out of safety sensitive jobs.").

**Exhibit A**

prohibited drug in his system, there was clearly a basis for the Administrator to move forward with the case.

In determining that the Administrator's position was not substantially justified, the law judge focuses on the sanction, arguing that revocation was overly harsh. However, disagreement with the sanction does not mean that the Administrator was not substantially justified in issuing the complaint, particularly where the hearing law judge and Board concluded that the Administrator proved the regulatory violation by a preponderance of the evidence. A hearing was required to determine the sanction and applicant had the opportunity to present mitigating factors in support of a lower sanction. The Board declines to hold that the Administrator should have abandoned the case.

Because the Board finds that the Administrator had a reasonable basis for pursuing the allegations against applicant, especially given the Administrator's success in proving the charged violation and the role credibility findings played in determining the outcome, the Board overturns the law judge's EAJA award to applicant.

**ACCORDINGLY, IT IS ORDERED THAT:**

1. The Administrator's appeal is granted; and

2. The law judge's decision granting fees is reversed.


HOMENDY, Chairman; GRAHAM, CHAPMAN, and INMAN, Members of the Board, concurred in the above opinion and order.

**Exhibit A**

# UNITED STATES OF AMERICA
# **NATIONAL TRANSPORTATION SAFETY BOARD**
## OFFICE OF ADMINISTRATIVE LAW JUDGES

In the Matter of the Application of

**JAMES K. KNIGHT,**

For an award of attorney's fees and other expenses pursuant to the Equal Access to Justice Act.

Docket No.: 1018-EAJA-SE-30667

## **DECISION AND ORDER**
## **GRANTING, *IN PART*, APPLICANT'S APPLICATION**
## <u>**FOR AN EQUAL ACCESS TO JUSTICE ACT AWARD**</u>

*Service*:  Elizabeth Vasseur-Browne, Esq.
Cooling & Herbers, P.C.
lbrowne@coolinglaw.com
*By E-Mail Only*

James K. Knight
*By E-Mail though Applicant's Counsel*

Alison Baxter, Esq.
Federal Aviation Administration
Aviation Litigation Division
AGC-300, Office of Chief Counsel
Allison.Baxter@faa.gov
*By E-Mail Only*

On November 12, 2021, James K. Knight (Applicant) filed for an Equal Access to Justice Act (EAJA)[1] award of attorney's fees and expenses under the provisions of the Act and the implementing rules of the Board's Rules of Practice in Air Safety Proceedings (Board).[2] The Applicant contends that he meets the

---

[1] Equal Access to Justice Act, **5 U.S.C. § 504.**

[2] **49 C.F.R. Part 826.1** states, "An eligible party may receive an award when it prevails over the Federal Aviation Administration unless the Government agency's position in the proceeding was substantially justified..."

**Exhibit A**

eligibility requirements for an EAJA award of $70,039. On December 13, 2021, the Administrator filed an answer to that application, and the Applicant filed a reply on December 28, 2021.

## THE EAJA

The EAJA [3] requires an award of certain attorney's fees and other specified costs that a qualified prevailing party[4] incurs unless the government shows that it was substantially justified in pursuing its complaint.

Upon review of the EAJA, administrative record, the parties' arguments, and the Board Rules, the undersigned finds that the Applicant's application should be granted, *in part*. The Administrator must pay the Applicant $62,821. The undersigned's rationale follows.

## THE UNDERLYING CASE

On May 20, 2019, the Administrator issued an Emergency Order of Revocation of the Applicant's Airline Transport Pilot (ATP), ground instructor, and first-class medical certificates based on the alleged violation of 14 Code of Federal Regulation (C.F.R.), Section (§) 120.33(b).[5] Based on the alleged violation, the Administrator determined the Applicant lacked the qualifications to hold an airman medical certificate of *any class* under the medical standards outlined in 14 C.F.R. §§ 67.107(b)(2), 67.207(b)(2), and 67.307(b)(2).[6]

The Applicant appealed that order on May 30, 2019. On June 19, 2019, the Administrator filed the Emergency Order of Revocation as the Complaint.[7] The Applicant waived the emergency timeline, and a hearing was held on September 5, 2019.

---

[3] Equal Access to Justice Act, 5 U.S.C. § 504; *See* also 49 C.F.R. part 826.

[4] When a party seeking fees under EAJA is an individual, he or she has standing to pursue such fees only if his or her net worth does not exceed $2,000,000 at the time of the initiation of the adversary adjudication. *See* 5 U.S.C. § 504 (b)(1)(B).

[5] 14 C.F.R. § 120.33(b) states, "No certificate holder or operator may knowingly use any individual to perform, nor may any individual perform for a certificate holder or an operator, either directly or by contract, any function listed in subpart E of this part while that individual has a prohibited drug, as defined in this part, in his or her system."

[6] 14 C.F.R. §§ 67.107(b)(2), 67.207(b)(2) and 67.307(b)(2) state, "No substance abuse within the preceding two years defined as a verified positive drug test result, an alcohol test result of 0.04 or greater alcohol concentration, or a refusal to submit to a drug or alcohol test required by the U.S. Department of Transportation or an agency of the U.S. Department of Transportation."

[7] *See* 49 C.F.R. § 821.55(a).

**Exhibit A**

On September 6, 2019, the law judge issued an Oral Initial Decision. In that decision, the judge determined that the Administrator proved the Applicant violated 14 C.F.R. § 120.33(b). The law judge found, however, that the sanction was excessive and mitigated the Administrator's sanction of revocation to a 90-day suspension. An appeal to the Board followed.

The Board reversed the law judge, *in part*, finding the Applicant proved his affirmative defense of accidental ingestion and upholding the 90-day suspension.

## THE NET WORTH REQUIREMENT

The Applicant meets the EAJA's net worth requirement. Under Board Rule 22, an applicant "must provide with its application a detailed exhibit showing the net worth of the applicant ... when the proceeding was initiated." *See* 49 C.F.R. § 826.22 (a). An applicant's net worth exhibit must provide "full disclosure of assets and liability" and "sufficient to determine whether the applicant qualifies under the standards." *Id.*

The Administrator, through counsel, argues that the Applicant failed to show his net worth did not exceed $2,000,000 when the adversary adjudication was initiated by failing to provide any reliable financial information. In reply, the Applicant asserts that it is evident, based upon his Declarations, which are the cornerstone of his case, that his net worth did not exceed $2,000,000 when this matter was initiated.

Upon review, the undersigned determined the EAJA application deficient. On November 22, 2023, the undersigned ordered the Applicant to refrain from guestimates and loose figures and provide reliable financial documentation to support his application. On December 1, 2023, the Applicant, through counsel, complied with that order to the undersigned's satisfaction.

## THE PREVAILING PARTY REQUIREMENT

The Applicant was the prevailing party. The EAJA contemplates awards when an applicant prevails on independent claims. An eligible party may receive an award when it prevails over the Administrator unless special circumstances make an "award unjust" or the government's position in the proceeding was substantially justified. *See* 49 CFR 826.5(a).[8]

In the underlying case, the law judge determined that the Administrator proved the Applicant violated 14 C.F.R. § 120.33(b). Despite that, the law judge mitigated the Administrator's sanction of revocation to a 90-day suspension. Both parties timely appealed the law judge's decision to the Board.

---

[8] 49 C.F.R. § 826.5(a) (allows awards when an Applicant prevails "in a significant and discrete substantive portion" of a proceeding). E.g. Alphin v. N.T.S.B., 839 F.2d 817, 822–23 (D.C.Cir.1988) (holding that the "FAA is not entitled to tack on ... meritless allegations" and that "the EAJA demands that each allegation made by the FAA be evaluated *at each step of the proceedings*....") (emphasis added).

**Exhibit A**

Upon review, the Board noted that an accidental or unintentional ingestion of a prohibited drug is an affirmative defense to a positive drug test. It found that the evidence showed no basis for the law judge to find that the Applicant did not prove his affirmative defense. On the contrary, the law judge's findings of fact demonstrated that the Applicant proved his affirmative defense by a preponderance of the evidence. Over and above that, the parties stipulated that the Applicant did not intentionally or knowingly ingest his son's medication. In turn, the Board reversed the law judge's decision, making the Applicant the prevailing party based on the merits of a final judgment.

The undersigned, therefore, finds that the Applicant meets the EAJA's prevailing party requirement. The remaining issue is whether the Administrator's position was substantially justified.

## THE SUBSTANTIALLY JUSTIFIED STANDARD

EAJA analysis requires that the Administrator prove it maintained a substantially justified position at every stage of the litigation. The burden of proof lies with the government to show that its position was reasonable in law and fact. See 49 C.F.R. § 826.5(a). The analysis includes whether the government had sufficient reliable circumstantial evidence—thus, not weak, or tenuous evidence—to proceed against the applicant and initiate litigation.

To show the Administrator maintained a substantially justified position, the government must establish that there is a "reasonable basis in truth for the facts alleged in the pleadings; that there exists a reasonable basis in law for the theory the Administrator propounds and that the facts alleged will reasonably support the legal theory advanced." *See McCrary v. Administrator*, 5 NTSB 1235, 1238 (1986), citing United States v. 2,116 Boxes of Boned Beef, 726 F. 2d 1481 (10th Cir. 1984).

If the Administrator meets that burden, the government is not required to pay attorney's fees or expenses if its position was substantially justified or if special circumstances make an award unjust. *See* 5 U.S.C. § 504(a)(1). The applicant prevails if the Administrator fails to meet the substantially justified standard.

## THE PARTIES' POSITIONS

The Applicant, through counsel, argues that the evidentiary record establishes that the Administrator was not reasonably or substantially justified in pursuing an emergency revocation against his ATP, ground instructor, and medical certificates. The Applicant contends that during the investigation, he informed the Administrator that he accidentally took his son's medication while sleep-deprived after a family emergency. To support his assertions, the Applicant provided emergency room records and photographs of the medicine bottles to show how easily they could be confused during a chaotic crisis. Nevertheless, the Administrator took no further investigative action and issued an order of revocation.

The Applicant argues he should not have to bear high legal bills and loss of employment due to the Administrator's decision to stop investigating because the Administrator determined affirmative defenses were not possible in an ingestion of a prohibited drug case. The Applicant argues that the law judge and the Board found that accidental ingestion is a valid affirmative defense, and that the enforcement action of

Page 4 of 10

**Exhibit A**

revocation was excessive, unreasonable, and not substantially justified in fact or law. Beyond that, the Applicant argues that the Administrator has always conceded to the facts of accidental ingestion, and instead of seeking an appropriate sanction, the Administrator pressed forward toward revocation. Thus, the Administrator was not reasonably or substantially justified in pursuing an emergency revocation against his certificates.

The Administrator, through counsel, remains steadfast in taking the position that accidental ingestion is not a valid affirmative defense. The Administrator argues that neither the law judge nor the Board had the authority to modify the sanction. Moreover, an accidental or unintentional ingestion is not a legally sufficient affirmative defense to a positive drug test result as a matter of law. Thus, it was reasonable for the Administrator to advance his position, given that the Board's precedent has always supported such a contention. Moreover, the Administrator argues that the Applicant's claim of accidental ingestion does not excuse his conduct in returning to work to perform safety-sensitive functions a few days earlier.

The Administrator argues that despite the Board finding that Applicant proved his affirmative defense, the Board nevertheless affirmed the law judge's finding that the Applicant violated the regulations and imposed a punitive sanction—thus, treating Applicant's accidental ingestion as a mitigating factor and not an affirmative defense. Even if assuming the Applicant's claim of unintentional ingestion could be construed as an affirmative defense, the Administrator argues it fails because the Board took a novel approach instead of determining whether accidental ingestion is a legally sufficient affirmative defense to a positive drug test.

## ANALYSIS AND DISCUSSION

The Administrator was not substantially justified. The term "substantially justified" carries significant weight in the legal context. It means that the government's position must be not just reasonable, but also firmly grounded in both fact and law. This standard, as established in *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), requires the government's position to have a solid, rather than marginal, basis in law and fact. In other words, it must be more than just defensible; it must be well-founded. To meet this standard, the government must carefully assess whether there is sufficient, reliable evidence to support its action, as demonstrated in *Catskill Airways, Inc.*, 4 NTSB 799, 800 (1983).

The Administrator pursued certificate revocation without the benefit of a reasonable investigation. From the onset, the Applicant asserted that the ingestion of the prohibited drug was accidental and unintentional. In support, the Applicant explained the chaos that led up to the ingestion. He supplied the Administrator's investigator with emergency room records showing that the Applicant and his wife rushed their sick child to the emergency room to determine what was causing his ailments. The Applicant also provided photographs of the medication to show the proximity and the similarities of the bottles that could easily be confused during a family crisis. Even though the Applicant showed the Administrator that the ingestion was a seeming reasonable mistake, the Administrator pursued a revocation action without further thought. At the hearing, Investigator Jones claimed a "due diligence" investigation was conducted prior to pursuing revocation. The undersigned respectfully disagrees.

Page 5 of 10

**Exhibit A**

The Applicant neither denied ingesting the prohibited drug nor did the Applicant question the positive lab results. Thus, the Applicant handed the Administrator the "due diligence" evidence on a silver platter. His intention was to disprove an *intentional* violation that should have resulted in modifying the sanction. Beyond that, the Administrator had an obligation to assess the Applicant's defense more closely to determine whether the government should continue to pursue the action in light of that evidence. In addition, the investigator failed to evaluate the opinion of Martin Lythgoe, a drug and alcohol counselor of over thirty years in substance abuse counseling within the realm of the Department of Transportation. Mr. Lythgoe's extensive experience and expertise make his opinion highly credible. He stated that the Applicant was mandated to be evaluated to satisfy employment reinstatement. At the hearing, Counselor Lythgoe testified that the Applicant's historical background added to the believability of his assertions. Counselor Lythgoe recommended that the Applicant be returned to duty with minimal recommendations and, soon thereafter, suggested that the Applicant return to safety-sensitive duties, which was more evidence to support the Applicant's assertions of accidental ingestion.

The Administrator's pursuit of revocation was inappropriate. It is clear that after the Applicant provided the Administrator with satisfactory proof that led up to the accidental ingestion, the Administrator was obligated to modify the sanction from revocation to suspension. The undersigned infers the government's acceptance of the Applicant's explanation because the Administrator had no reservations in stipulating to these facts at the hearing. Moreover, had the Administrator recognized the significance of Counselor Lythgoe's opinion instead of leading with his chin in pursuing an emergency revocation action, the Administrator would have discovered prior to the enforcement hearing that his opinion supported the Applicant's claim.

The Administrator, in recognition of the Applicant's regulation violation, treated it as a strict liability offense. At the hearing, the experienced Investigator Jones testified that her office *always* recommends revocation in ingestion of prohibited drug allegations. She further clarified that once the medical review officer verifies the test result as positive, it is an automatic revocation. Thus, the Administrator concluded that there is *never* a defense to ingesting a prohibited drug case.

What the undersigned finds most troubling is that once the Administrator believes he has sufficient evidence to show a violation has occurred, any defense is futile, making further investigation unnecessary. Because of that frame of mind, the Applicant incurred over sixty thousand in legal expenses to defend himself, which supports the contention that the government was not substantially justified in pursuing revocation.

The Administrator's position, which led to the revocation of the Applicant's certificates, was not only unreasonable but also lacked any basis in truth or law. Despite the Administrator's reliance on a flawed theory that affirmative defenses are not viable in ingesting a prohibited drug, the Administrator persisted in his course of action. Based on the above, the Administrator failed to meet the "substantial justification" test as outlined in McCrary.[9]

---

[9] To establish "substantial justification," the Government must "…show (1) that there is a reasonable basis in truth for the facts alleged in the pleadings; (2) that there exists a reasonable basis in law for the theory it (the Government)

**Exhibit A**

The Administrator's action in the underlying proceeding is what the EAJA is intended to deter. In *Administrator v. Hampton*, the Board stated that "EAJA awards are intended to dissuade the government from pursuing 'weak or tenuous' cases." *See Hampton*, NTSB Order No. EA–3557 (1992) (citing Catskill Airways, 4 N.T.S.B. 799, 800 (1983).

The underlying case should not have proceeded to an evidentiary hearing. The Administrator, in a series of actions that can only be described as unfair, acted unfairly from the inception of the investigation. Despite the Applicant providing proof that he unintentionally ingested his son's medications during a family crisis, the Administrator chose to inflict the ultimate sanction of revocation on a highly tenuous case—the type of case that Congress intended to discourage by permitting recovery of fees and expenses incurred as a result of litigation under the EAJA. This unfair treatment of the Applicant is a clear violation of the principles of fairness and justice. Accordingly, the undersigned finds that the Applicant has met the statutory requirements for an award.

## AWARD AMOUNT

The Applicant has requested an award of $70,039.[10] His anticipated award amount includes 291.8 hours of attorney fees, 30.7 hours of paralegal fees, and $1,629 in expenses.

The undersigned reviewed the reasonableness of the fees and expenses, including those objected to by the Administrator. The attorney hours were reduced by 19.9, a reduction that was carefully justified. The reduced hours include those resulting from research related to a potential Court of Appeals proceeding, research on Board members, research, and analysis regarding the timing of NTSB reconsideration decisions, travel time in transit, drafting and preparing letters, etc. to elected officials, among other outside-the-scope tasks.

The paralegal hours and expenses were deemed accurate and proper. The undersigned used the maximum hourly rate calculation using the formula found in 49 C.F.R. § 826.6[11] as stated below:

---

propounds; and (3) that the facts alleged will reasonably support the legal theory advanced." *See* McCrary v. Administrator, 5 NTSB 1235, 1238 (1986), citing United States v. 2.116 Boxes of Boned Beef, 726 F. 2d 1481 (10th Cir. 1985).

[10] The initial application listed fees and expenses of $63,648.05, which was amended in December 2021 to include an additional $6,391.16.

[11] 49 C.F.R. § 826.6 Allowable fees and expenses.

  (a) Awards will be based on rates customarily charged by persons engaged in the business of acting as attorneys, agents, and expert witnesses, even if the services were made available without charge or at a reduced rate to the applicant.

  (b) (1) No award for the fee of an attorney or agent under these rules may exceed $75 indexed as follows:

**Exhibit A**

Average Annual CPI for 2019-2021 is 261.8128[12]

Divide 261.8128 by 90.9 = 2.88

Multiply 2.88 by $75.00 = $216.02/hour

Accordingly, the EAJA award is calculated as follows:

| Item | Allowed | Rate | Amount |
|---|---|---|---|
| Attorney Fees | 271.9 hours | $ 216.02 | $ 58,735.84 |
| Paralegal Fees | 30.7 hours | $ 80.00 | $ 2,456.00 |
| Expenses | $ 1,629.48 | | $ 1,629.48 |
| **Total Award** | | | **$ 62,821.32** |

The CPI to be used is the annual average CPI, All Urban Consumers, U.S. City Average, All Items, except where a local, All Item index is available. Where a local index is available, but results in a manifest inequity vis-a-vis the U.S. City Average, the U.S. City Average may be used. The numerator of that equation is the yearly average for the year(s) the services were provided, with each year calculated separately. If an annual average CPI for a particular year is not yet available, the prior year's annual average CPI shall be used. This formula increases the $75 statutory cap by indexing it to reflect cost of living increases, as authorized in 5 U.S.C. 504(b)(1)(A)(ii). Application of these increased rate caps requires affirmative findings under § 821.6(c) of this chapter.

(2) No award to compensate an expert witness may exceed the highest rate at which the agency pays expert witnesses. However, an award may also include the reasonable expenses of the attorney, agent, or witness as a separate item, if the attorney, agent, or witness ordinarily charges clients separately for such expenses.

(c) In determining the reasonableness of the fee sought for an attorney, agent, or expert witness, the administrative law judge shall consider the following:

(d) (1) If the attorney, agent, or witness is in private practice, his or her customary fee for similar services, or if an employee of the applicant, the fully allocated cost of the services.

(2) The prevailing rate for similar services in the community in which the attorney, agent, or witness ordinarily performs services.

(3) The time spent in the representation of the applicant.

(4) The time reasonably spent in light of the difficulty or complexity of the issues in the proceeding; and

(5) Such other factors as may bear on the value of the services provided.

[12] The Application used the monthly CPI for August 2021 in its calculation of the appropriate hourly fee, which is not the appropriate measure. In the Board's regulations for EAJA cases, the Board uses CPI figures to calculate the maximum amount of attorney's fees available for each year. For this case, the annual average of the three years in which fees were incurred is used in furtherance of a reasonable balance between accuracy and ease of computation. *See* Knudsen v. Commissioner, 360 F.Supp.2d 963 (N.D. Iowa 2004).

**Exhibit A**

Applicant is entitled to an EAJA award of eligible fees and expenses rounded to the nearest dollar in the amount of **$62,821.**

## ORDER

**IT IS THEREFORE ORDERED AND DECREED** that Applicant herein be awarded fees and expenses under the Equal Access to Justice Act in the amount of **$62,821** in accordance with the provisions of Rule 826.40.[13]

Entered this **16th** day of **May 2024**, at San Antonio, TX.

*Alisa M. Tapia*

Alisa M. Tapia
Administrative Law Judge

---

[13] § 826.40 Payment of award: Within 5 days of the Board's service of a final decision granting an award of fees and expenses to an applicant, the Administrator shall transmit to the applicant instructions explaining how the applicant may obtain the award. These instructions may require, but are not limited to, the submission of the following information to the Administrator: a statement that the applicant will not seek review of the decision in the United States courts, bank routing numbers to which the Administrator may transmit payment, and the applicant's tax identification or Social Security number. The Administrator will pay the applicant the amount awarded within 60 days of receiving the necessary information from the applicant unless judicial review of the award or of the underlying decision of the adversary adjudication has been sought by the applicant or any other party to the proceeding.

Page 9 of 10

**Exhibit A**

<u>**APPEAL** (EAJA INITIAL DECISION)</u>

**Important:** All a p p e a l -related filings described below **m u s t** also be simultaneously served on all other parties to this proceeding.

Any party to this proceeding may appeal this written initial decision by filing a written notice of appeal within <u>10 days</u> after the date on which it was served (the service date appears on the first page of this order) to:

National Transportation Safety Board
Office of Administrative Law Judges
490 L'Enfant Plaza East, S.W.
Washington D.C. 20594
Telephone: (202) 314-6150 or (800) 854-8758
FAX: (202) 314-6158
E-mail: <u>aljappeals@ntsb.gov</u>

*Please note.: The Office of Administrative Law Judges prefers to receive appeals via e-mail.*

That party <u>must also perfect the appeal</u> by filing a <u>brief</u> in support of the appeal within <u>30 days</u> after the date of service of this order. That brief must be filed <u>directly</u> with the:

National Transportation Safety
Board Office of General Counsel
490 L'Enfant Plaza East,
S.W. Washington, D.C.
20594
Telephone: (202) 314-6080
FAX: (202) 314-6090
E-mail: <u>Boardappeals@ntsb.go</u>

The Board may <u>dismiss</u> appeals on its own motion, or the motion of another party, when a party who has filed a notice of appeal fails to perfect the appeal by filing a timely appeal brief.

A brief in reply to the appeal brief™ be filed by any other party <u>directly</u> with the Office of General Counsel within <u>30 days</u> after that party was served with the appeal brief.

All papers, including motions and replies, submitted thereafter should be filed <u>directly</u> with the Office of General Counsel.

The Board directs your attention to Rules 7, 8, 43, 47, 48 and 49 of its Rules of Practice (49 C.F.R. §§ 821.7, 821.8, 821.43, 821.47, 821.48 and 821.49) for further information regarding appeals.

**ABSENT A SHOWING OF GOOD CAUSE, THE BOARD WILL NOT ACCEPT LATE APPEALS OR APPEAL BRIEFS.**

**Exhibit A**

# UNITED STATES COURT OF APPEALS
## DISTRICT OF COLUMBIA CIRCUIT

JAMES K. KNIGHT,

       Petitioner,

v.

NATIONAL TRANSPORTATION
SAFETY BOARD and
FEDERAL AVIATION ADMINISTRATION,

       Respondents.

**Petition for Review**

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2025, a copy of the *Petition for Review of Agency Order* was served upon the Office of the General Counsel for the National Transportation Safety Board, the Attorney General of the United States, and the Office of the Chief Counsel for the Federal Aviation Administration via certified mail. This filing was also served by email upon Office of the General Counsel for the National Transportation Safety Board and the Office of the Chief Counsel for the Federal Aviation Administration.

**NATIONAL TRANSPORTATION SAFETY BOARD**
**OFFICE OF THE GENERAL COUNSEL**
legal@ntsb.gov
490 L'Enfant Plaza East, SW
Washington, DC 20594
Telephone: (202) 314-6000
**Certified Mail No.:** 9589 0710 5270 1701 9438 39

**U.S. DEPARTMENT OF JUSTICE**
**ATTORNEY GENERAL OF THE UNITED STATES**
950 Pennsylvania Avenue, NW
Washington, DC 20530
**Certified Mail No.:** 9589 0710 5270 1701 9438 46

**FEDERAL AVIATION ADMINISTRATION**
**OFFICE OF THE CHIEF COUNSEL**
9-AGC-FAA-Service@faa.gov
800 Independence Avenue, SW
Washington, DC 20591
Telephone: (202) 267-3773
**Certified Mail No.:** 9589 07105270 1701 9438 53

**AVIATION LITIGATION DIVISION, WESTERN TEAM**
**ALLISON BAXTER**
allison.baxter@faa.gov
777 S. Aviation Blvd., Suite 150
El Segundo, CA 90245
Telephone: (424) 391-2710
Facsimile: (424) 405-7073

*/s/ Elizabeth A. Vasseur-Browne*
Elizabeth A. Vasseur-Browne

2